IN THE COURT OF CRIMINAL APPEALS

OF TEXAS





NO.74,445





JOHNNY PAUL PENRY, Appellant


v.


THE STATE OF TEXAS





ON DIRECT APPEAL

FROM POLK COUNTY





Keller, J., filed a dissenting opinion in which COCHRAN, J., joined.



 In this case, the mitigation special issue submitted to the jury tracked the language of the
statute. That statutory issue broadly encompasses any mitigating circumstance that might reduce a
defendant's moral blameworthiness - including low intelligence that does not sink to the level of
mental retardation. The trial court's instructions concerning the special issue did not suggest
otherwise. With regard to the question before us, those instructions simply apprised the jury of two
things. First, the instructions informed the jury that mental retardation automatically satisfied the
requirements of the mitigation special issue. Second, the instructions informed the jury that, if
mental retardation were not found, the jury should consider any other circumstance the jury believed
reduced a defendant's moral blameworthiness and give it whatever weight the jury deemed
appropriate. Low intelligence that does not sink to the level of mental retardation is a circumstance
other than mental retardation. Under the trial court's instructions, the jury could have, but was not
required to, decide that this circumstance had mitigating value sufficient by itself, or in combination
with other factors, to warrant the imposition of a life sentence rather than the death penalty. 

 The trial court's instructions did not misstate the law (statutory or constitutional), and the
Court does not seem to suggest otherwise. Rather, the Court indicates that the instructions were
ambiguous in a way that was reasonably likely to have misled the jury into believing something
inconsistent with the requirements established in Penry I (1) and its progeny. In support of this
contention, the Court cites and discusses Boyde v. California (2) for the proposition that an ambiguous
instruction deprives a defendant of his constitutional rights if there exists a reasonable likelihood that
the jury applied the instruction in a constitutionally impermissible manner. (3) 

 I find a particular passage in that opinion to be relevant here, and while it is included in one
of the Court's quotations, I believe the Court has failed to apprehend its significance to the case at
bar:

Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of
meaning in the same way that lawyers might. Differences among them in
interpretation of instructions may be thrashed out in the deliberative process, with
commonsense understanding of the instructions in light of all that has taken place at
the trial likely to prevail over technical hairsplitting. (4) 


Most people understand differences in degree and the impact that such differences have on whether
a certain action is mandatory or subject to discretion. When an instruction says that mental
retardation is automatically mitigating but other circumstances can, in the jury's discretion, be
considered mitigating, common sense suggests that other circumstances would include intelligence
deficits that are less severe than mental retardation. 

 The Court interprets the instruction to consider "other" circumstances as directing the jury
away from the matter of intelligence altogether. The Court does so by concluding that the jurors
would reason that "other" circumstances exclude those based on the same evidence as a circumstance
they have already considered. But the Court's approach tends to confuse "circumstances" with
"evidence." Those two terms are not the same and there is no reasonable likelihood that the jurors
would equate them. The fact is that the charge instructed the jury to consider all the evidence in
determining the issue of mental retardation. If the jury followed that instruction and then, in
accordance with the reasoning attributed to it by the Court, excluded circumstances based upon the
same evidence, then it would necessarily exclude all circumstances, regardless of whether those
circumstances related to intelligence, as it had already been instructed to consider all the evidence
in connection with its earlier mental retardation determination. Obviously, the jury can be expected
to understand that it may well be called upon to consider a particular item of evidence at multiple
points in its deliberations. That understanding is surely buttressed by the fact that charge instructed
the jury to consider all the evidence in connection with all the special issues.

 The Court may be suggesting that the "other circumstances" language would lead the jury
to look for the evidence that was predominantly relevant to the issue of mental retardation and
exclude consideration of other issues to which that same evidence was predominantly relevant. Or
perhaps the Court is suggesting that the jurors would look to the nature of the issue and decide that
various intelligence issues were all similar enough to constitute a single "circumstance" to be
considered solely within the umbrella of the mental retardation inquiry. However, those types of
suggestions attribute to the jury a willingness to engage in technical and hairsplitting distinctions
based upon the most fragile grammatical foundations. As the Supreme Court has explained, (5) such
conduct by the jury is not reasonably likely to have occurred.

 I think the trial court's instruction reasonably conveyed to the jury that a finding of mental
retardation required an automatic "yes" answer to the mitigation special issue but that other
circumstances, including low intelligence that did not qualify as mental retardation, were available
for consideration. I would reference another passage in the Boyde opinion that seems especially
appropriate for the case at bar: "There is, of course, a strong policy in favor of accurate determination
of the appropriate sentence in a capital case, but there is an equally strong policy against retrials years
after the first trial where the claimed error amounts to no more than speculation." (6) Appellant has
already been sentenced to death three times in the same case, and the third time, it is abundantly clear
that the trial court made every effort to scrupulously comply with all of the Supreme Court's
pronouncements. The Court's reversal, sending the case for a fourth punishment hearing, is based
upon speculation that the jury might have read something into the charge that is not there.

 I respectfully dissent.

 Keller, Presiding Judge

Date filed: October 5, 2005

Publish
1. Penry v. Lynaugh, 492 U.S. 302 (1989).
2. 494 U.S. 370 (1990).
3. See id. at 380.
4. Id. at 380-381.
5. See footnote 4, supra.
6. 494 U.S. at 380.